**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**PAUL GALLAND, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                  **NO. 23-3392**

**HARVEY GULF INTERNATIONAL**              **SECTION: D (5)**
**MARINE, LLC, ET AL.**

<u>**ORDER AND REASONS**</u>

Before the Court is a Motion *in Limine* to Exclude all Evidence and Argument
Related to Subsequent Remedial Measures, filed by Harvey Gulf International
Marine, LLC, HGIM Corp., and Harvey Energy, LLC ("Defendants").[1] Paul Galland
and Brennan Cubbedge ("Plaintiffs") have filed an opposition to the Motion,[2] to which
Defendants have filed a reply.[3] After careful consideration of the parties' memoranda,
and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the
Motion.[4]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In a previous Order and Reasons,[5] the Court has set forth the factual
background in this matter. The Court, however, will briefly recite the factual
allegations as pertinent to the instant Motion. This case arises out of a liquid natural
gas explosion on the PSV HARVEY ENERGY occurring on April 28, 2023, where

---

[1] R. Doc. 53.
[2] R. Doc. 77
[3] R. Doc. 102.
[4] R. Doc. 53.
[5] R. Doc. 111.

Plaintiffs were injured while working as deckhands on the vessel.[6] After the incident, Defendants took various actions. Defendants allegedly repaired a loose wire and/or nut on a valve actuator on the PSV HARVEY ENERGY, painted/stenciled/installed "No Smoking" and "Hazard" signs on the PSV HARVEY ENERGY, implemented a safety stand-down after the incident, modified their safety manual and/or policies, and conducted post-incident investigations.[7]

On August 4, 2025, Defendants filed the instant Motion *in Limine* to Exclude all Evidence and Argument Related to Subsequent Remedial Measures.[8] Defendants assert that "Plaintiffs have indicated their intent to introduce evidence of various remedial measures taken by Harvey Gulf after the incident, including but not limited to: (1) repairs on the M/V HARVEY ENERGY and other fleet upgrades or repairs; (2) installation or stenciling of 'No Smoking' or 'Hazard' signs on the M/V HARVEY ENERGY and other vessels; (3) post-incident safety stand-downs and meetings; (4) changes to safety manuals, policies, and procedures; (5) references to post-incident investigations or the adequacy thereof; and (6) related photographs, documents, and communications."[9] Defendants argue that Federal Rule of Evidence 407 ("Rule 407") prohibits the admission of these subsequent remedial measures because they are "offered solely to prove negligence, unseaworthiness, or a need for additional warnings or instructions."[10]

---

[6] R. Doc. 1.
[7] R. Doc. 53-1 at pp. 2–4.
[8] R. Doc. 53.
[9] *Id.* at p. 2.
[10] *Id.*

Plaintiffs oppose the Motion.[11] First, Plaintiffs assert that "most of what Harvey calls 'subsequent remedial measures' are actually required and pre-existing safety measures that Harvey either failed to implement or negligently implemented before the fire."[12]  Second, Plaintiffs contend that even if the remaining evidence at issue are subsequent remedial measures, Rule 407 "expressly permits such evidence for other purposes, including feasibility (if disputed), ownership or control, and impeachment."[13] Lastly, Plaintiffs maintain that "[t]his Court should decline Harvey's invitation to conduct a premature, hypothetical trial on admissibility. This Court should hear the testimony and then decide whether a particular item qualifies as a subsequent remedial measure at all, and if so, whether it is admissible for one of Rule 407's recognized purposes."[14]

In their reply memorandum, Defendants argue that "Plaintiffs seek to avoid Rule 407 and the policy supporting it by improperly characterizing remedial measures, alleging pre-existing knowledge or requirements, claiming the absence of post-incident investigations, or claiming evidence is purportedly offered for impeachment."[15] Defendants maintain that such characterizations are not applicable to invoke Rule 407's illustrative exceptions – "impeachment, feasibility, ownership or control[.]"[16] Even if an exception applied, according to Defendants, "Rule 403 requires

---

[11] R. Doc. 77.
[12] *Id.* at p. 1.
[13] *Id.*
[14] *Id.* at pp. 1–2.
[15] R. Doc. 102 at p. 2.
[16] *Id.*

exclusion when the probative value is substantially outweighed by, among other things, unfair prejudice, confusing the issues, or misleading the jury."[17]

## II.    LEGAL STANDARD

According to the Fifth Circuit, the purpose of a motion in *limine* is to prohibit opposing counsel "from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds."[18]

Federal Rule of Evidence 407 governs the admissibility of subsequent remedial measures, in which Rule 407 provides:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or — if disputed — proving ownership, control, or the feasibility of precautionary measures.[19]

"The Advisory Committee Notes explain that the primary justification for [R]ule 407 is the 'social policy of encouraging people to take, or at least not discouraging them

---

[17] *Id.*

[18] *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (quotation and internal quotation marks omitted).

[19] Fed. R. Evid. 407.

from taking, steps in furtherance of added safety.'"[20] Rule 407 "also seeks to ensure that negligence is properly determined 'according to what the defendant knew or should have known *prior to the accident,* not what the defendant knew as a result of the accident.'"[21]  "Any evidence not excluded by Rule 407, of course, must still be relevant and its probative value must, under Rule 403, outweigh any dangers associated with its admission."[22]

Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, or if the fact it seeks to prove is of consequence in determining the action.[23]  While all relevant evidence is admissible, the Court may exclude relevant evidence if its probative value is substantially outweighed by danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[24]

However, the Fifth Circuit has held that, "[t]he exclusion of evidence under Rule 403 should occur only sparingly."[25]  Additionally, "[r]elevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403."[26]

---

[20] *Adams v. Chevron USA, Inc.*, 383 Fed. Appx. 447, 452 (5th Cir. 2010)(quoting Fed. R. Evid. 407, Advisory Committee Note (1972)).
[21] *Id.* (quoting 2 Stephen A. Salzburg, Michael M. Martin & Daniel J. Capra, Federal Rules of Evidence Manual § 407.02[3], at 407–6 (9th ed. 2006) (emphasis original)).
[22] *Dixon v. International Harvester Co.*, 754 F.2d 573, 584 (5th Cir. 1985).
[23] Fed. R. Evid. 401.
[24] Fed. R. Evid. 403.
[25] *United States v. Pace*, 10 F.3d 1106, 1115 –16 (5th Cir. 1993); *See United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999) (same).
[26] *Pace*, 10 F.3d at 1115-16 (quotation omitted).

District courts are afforded wide discretion in determining the relevance and admissibility of evidence under Fed. R. Evid. 401 and 402.[27] A district court's ruling on evidentiary issues is reviewed by an appellate court for an abuse of discretion.[28] Thus, when the district court conducts "a carefully detailed analysis of the evidentiary issues and the court's own ruling, appellate courts are chary about finding an abuse of discretion."[29]

## III.    ANALYSIS

Defendants seek to exclude various types of evidence pursuant to Rule 407's prohibition on subsequent remedial measures. Defendants specifically ask the Court to exclude evidence regarding:

(1) a subsequent repair of a loose wire and nut on a valve actuator on the M/V HARVEY ENERGY, along with any other fleet upgrades or repairs, including any photographs, videos, documentation, or communications related to same;

(2) "Painting/stenciling of "No Smoking" or "Hazard" signs after the incident and any drawings, photographs, documentation, or communications regarding the purchase, acquisition and/or installation of "No Smoking" or "Hazard" signs/stencils for or on the M/V HARVEY ENERGY or any other vessel in the fleet after the incident;

(3) The safety stand-down called by Harvey Gulf's Chairman of the Board and Chief Executive Officer Shane Guidry after the incident, including any and all communications regarding same and all references to post-incident safety meetings or alerts that addressed the incident, including any related documents, summaries, or notes;

(4) Changes, additions, or revisions to Harvey Gulf's Safety Manual or safety policies and procedures, including but not limited to:
   a. Changes to Lock Out Tag Out procedures;
   b. Changes to smoking policy;

---

[27] *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008).
[28] *Kelly v. Boeing Petroleum Services, Inc.*, 61 F.3d 350, 356 (5th Cir. 1995).
[29] *Id.*

    c. Changes to Hot Work policy;
    d. Changes to policy regarding management of records/management of change;
    e. Changes to "Permits to Work";
    f. Change stating Liquid Natural Gas ("LNG") is not to be burned when any crew member is present on the flybridge; and
    g. Change requiring crew members to bring gas meters with them when they go to the flybridge[;]

(5) All references to Harvey Gulf's post-incident investigation, or lack thereof, including any findings, the absence of any findings, and any allegations that Harvey Gulf's post-incident investigation was substandard or lacking in any way; [and]

(6) Any and all photos, videos, documents, communications, correspondence, documents by, to, from, between, or on behalf of Harvey Gulf and/or any governmental agency and/or internally at Harvey Gulf related to any subsequent remedial measures taken after the incident forming the basis of Plaintiffs' Complaint that would have made the events complained of therein less likely to occur and that are offered to prove negligence, unseaworthiness, defects in design, a need for warning or instruction, or any other purposes prohibited by Federal Rule of Evidence 407.[30]

The Court will take each argument in turn.

### A.    Subsequent repair of a loose wire connection or nut on a valve actuator and other fleet upgrades

Defendants contend that "[a]ny evidence of subsequent repair or fleet upgrades is irrelevant and unfairly prejudicial under Rules of Evidence 401 and 403 and would violate the policy goal of Rule 407."[31] Defendants argue that "[e]vidence of the subsequent repairs, in the words of Rule 407 are inadmissible when such measures taken post-incident 'would have made an earlier injury or harm less likely to occur.'"[32] Plaintiffs, conversely, argue that "[t]he loose wire connection and/or loose nut on the

---

[30] R. Doc. 53-1 at pp. 2–4.
[31] *Id.* at p. 6.
[32] *Id.* at p. 7.

valve actuator will be offered to prove Harvey's knowledge and causation of the fire and to rebut Harvey's affirmative defense that Plaintiff Paul Galland was contributorily negligent."[33] Plaintiffs also seek to introduce subsequent remedial evidence of the loose wire or loose nut valve to show the obviousness of the dangerous condition.[34]

### 1. Knowledge

Defendants contend that "[a]ny evidence aimed at showing Harvey Gulf repaired a loose wire connection on a valve actuator after the incident, performed fleet upgrades, or made any other repairs must be excluded under Rule 407."[35] Plaintiffs counter that they seek to introduce evidence of the subsequent actuator valve repair to show Defendants' prior knowledge of the alleged defect.[36] Plaintiffs specifically point to James Yanner's, the vessel manager of Harvey's LNG fleet, subsequent repair of the loose wire connection and/or nut and his testimony to show that "whether Harvey had knowledge of this issue prior to the fire is a disputed issue of fact."[37] Defendants, in Reply, highlight the portion of Yanner's testimony in which he stated that he did not recall a problem with the valve actuator prior to the incident.[38] Relying on this testimony, Defendants assert that Rule 407 bars the introduction of such evidence because there is no evidence to support that Defendants had prior knowledge of any defect.[39] Further, Defendants argue that "Rule 407's

---

[33] R. Doc. 77 at p. 4.
[34] *Id.* at pp. 7–8.
[35] R. Doc. 53-1 at p. 7.
[36] R. Doc. 77 at p. 5
[37] *Id.*
[38] R. Doc. 102 at pp. 2–3; R. Doc. 102-1.
[39] R. Doc. 102 at pp. 2–3.

exclusion of remedial measures is to be broadly construed, except for the rule's narrow, enumerated exceptions; it is not subject to Plaintiffs' amorphous 'legitimate purpose' standard."[40]

Evidence of subsequent remedial measures are admissible "as proof of subsidiary issues in [a] case, such as knowledge of the dangerous condition or feasibility of precautionary measures."[41] However, "[a]ny evidence not excluded by Rule 407, of course, must still be relevant and its probative value must, under Rule 403, outweigh any dangers associated with its admission."[42]

Here, the Court finds that evidence of the subsequent repair of the actuator valve could potentially be admissible to show Defendants' potential knowledge of the alleged faulty valve actuator prior to the incident. The Court, however, reserves ruling on the admissibility of such evidence[43] for trial to ensure that it may balance the probative value and potential for unfair prejudice under Rule 403 in the proper context.[44] If such evidence is admissible under Rule 403 at trial, the jury will of course

---

[40] *Id.* at p. 1.

[41] *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1343 (5th Cir. 1978). *See Kirkland v. Marriott Intern., Inc.*, 416 F.Supp.2d 480, 489 (E.D. La. 2006)(Vance, J.)("Although Rule 407 prohibits the use of evidence of a defendant's subsequent remedial measures as proof of its negligence, the rule provides that evidence of such remedial measures may be admissible for certain purposes, including impeachment. Impeachment in this sense may include proving defendants' knowledge of the alleged dangerous condition at the time of the accident.")(internal citations omitted).

[42] *Dixon*, 754 F.2d at 584.

[43] This ruling encompasses the parties' dispute regarding any fleet upgrades, including but not limited to the Shipyard to do List, engine room photographs, and the Master's Handover Log dated 5/18/23. *See* R. Doc. 53-1 p. 6 n.5; R. Doc. 77 at pp. 10–12; R. Doc. 102 at p. 5.

[44] *See Johnson v. City of New Orleans*, Civil Action No: 19-12272, 2025 WL 2265699, at *2 (E.D. La. Aug. 6, 2025)(Guidry, J.)("Courts typically reserve evidentiary rulings until trial so that questions as to the evidence may be resolved in the proper context.")(internal quotation marks omitted).

be "'suitably instructed as to the purposes for which the evidence may be considered.'"[45]

### 2. Causation

Defendants assert that Rule 407 bars the admission of any evidence of the subsequent repair of the loose wire and/or loose nut on the actuator valve aboard the PSV HARVEY ENERGY.[46] Plaintiffs counter that because Defendants "did not conduct a thorough root cause analysis to determine how and why flammable gas was released in the area where the incident occurred when hot work was ongoing in that area[,]" causation as to how and why the gas was released is at issue.[47] Defendants reply by maintaining that causation is not at issue because "[n]o one disputes that liquified natural gas and/or diesel fumes were present in the area near the LNG purge vents where Paul Galland attempted to light a cigarette. In fact, Harvey Gulf maintains that the presence of gas fumes near the purge vents should be assumed because, after all, that is the primary purpose of the vents."[48]

The Fifth Circuit "has long recognized that subsequent remedial measures can be introduced on the issue of causation if that is in controversy."[49] "Yet, the Fifth Circuit has also cautioned against the admissibility of subsequent remedial measures

---

[45] *Jones v. H.W.C. Ltd.*, No. Civ.A. 01-3818, 2003 WL 42146, at *4 (E.D. La. Jan. 3, 2003)(Vance, J.)(quoting *Bailey v. Kawasaki-Kisen, K.K.*, 455 F.2d 392, 397 (5th Cir. 1972), abrogated on other grounds, *Rutledge v. Harley-Davidson Motor Co.*, 364 Fed. Appx. 103, 106 n.4 (5th Cir. 2010)).
[46] R. Doc. 53-1 at pp. 6–7.
[47] R. Doc. 77 at p. 6.
[48] R. Doc. 102 at p. 3.
[49] *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 429 (5th Cir. 2006).

when offered as rebuttal to claims of non-negligence, calling such arguments 'semantic manipulation[s]' that must be rejected."[50]

Defendants straightforwardly advise "[c]ausation is not at issue[.]"[51] Defendants explain that:

> Harvey Gulf maintains that causation is not a relevant issue in this matter. No one disputes that liquified natural gas and/or diesel fumes were present in the area near the LNG purge vents where Paul Galland attempted to light a cigarette. In fact, Harvey Gulf maintains that the presence of gas fumes near the purge vents should be assumed because, after all, that is the primary purpose of the vents.[52]

Since Defendants concede that the presence of LNG from the vessel's vents, along with the spark from the cigarette lighter, caused the explosion, the Court finds that causation is not at issue. Defendants admit that the "primary purpose" of the vents was to filter gas to the area of explosion.[53] Therefore, the Court determines that such subsequent remedial evidence is inadmissible to prove causation under Rule 407.

### 3. Contributory Negligence

Defendants seek to exclude evidence of the subsequent repair of a loose wire and/or nut on the actuator.[54] Plaintiffs, however, contend that "[e]vidence of a defendant's subsequent remedial measures may be admitted for the purpose of

---

[50] *Chesapeake Louisiana, L.P. v. Innovative Wellsite Systems, Inc.*, Civil Action No. 12-2963, 2015 WL 339022, at *2 (W.D. La. Jan. 23, 2015)(quoting *Hardy v. Chemetron Corp.*, 870 F.2d 1007, 1011 (5th Cir. 1989)).

[51] R. Doc. 102 at p. 3.

[52] *Id.* The Court discussed this representation in the brief with Counsel for Defendants at the pre-trial conference held on October 3, 2025. Counsel for Defendants reaffirmed their position at the pre-trial conference.

[53] *Id.*

[54] R. Doc. 53-1 at p. 6.

considering the defendant's contributory negligence."[55] In Reply, Defendants invoke the Fifth Circuit's decision in *Relf v. Wal-Mart Stores, Inc.*[56] to assert that subsequent remedial measure may not be used to rebut a defense of comparative fault.[57] The Court agrees.

"[R]emedial measures should be excluded when offered to show the degree of fault under comparative negligence regimes."[58] The Fifth Circuit has determined that a plaintiff is not entitled to offer evidence of a subsequent remedial measure solely because a defendant raises the defense of contributory negligence.[59] Although Plaintiffs aptly point to a prior section of this Court that held that "evidence of defendant's subsequent remedial measures may be admitted for the purpose of considering defendant's defense of contributory negligence[,]"[60] the Court declines to adopt this position in light of the Fifth Circuit's decision in *Relf*.[61] While *Relf* is an unpublished opinion, the Court finds the Fifth Circuit's decision persuasive.[62] As a final point, and perhaps most importantly, the text of Rule 407 prohibits the introduction of evidence of subsequent remedial measures to prove *negligence*.[63] The

---

[55] R. Doc. 77 at 7.
[56] *Relf v. Wal-Mart Stores, Inc.*, No. 94-30335, 1995 WL 103360, at *2 n.7 (5th Cir. Mar. 1, 1995).
[57] R. Doc. 102 at p. 4.
[58] 23 Wright & Miller's Federal Practice & Procedure § 5285 (2d. ed. 2025)(finding that "[t]here do[es] not appear to be any cases considering the application of the [subsequent remedial measure] rule in this context[]").
[59] *Relf*, 1995 WL 103360, at *2 n.7 ("Relf also apparently argues that he is entitled to offer evidence of subsequent remedial measures merely because Wal-Mart raised contributory negligence as a defense, but that is not the law.").
[60] *Scurlock Marine, Inc. v. W.W. Patterson Co.*, No. Civ.A. 95-528, 1997 WL 573405, at *2 (E.D. La. Sept. 12, 1997)(Clement, J.).
[61] *Relf*, 1995 WL 103360, at *2.
[62] *Id.*
[63] Fed. R. Evid. 407.

Court thus finds that such evidence is inadmissible to prove contributory negligence under Rule 407.[64]

### 4. *Obviousness*

Plaintiffs further argue that "evidence of defendant's subsequent remedial measures may be admitted for the purpose of establishing whether a dangerous condition was obvious."[65] Specifically, Plaintiffs allege that because Defendants may assert the defense of open and obvious – that it was obvious that Galland should not have attempted to light a cigarette in a non-smoking designated area – evidence of the subsequent actuator valve repair is admissible under Rule 407.[66] Defendants, in turn, assert that obviousness of the repaired actuator valve is not at issue in this case.[67] Defendants further argue that if Plaintiffs were allowed to present such subsequent remedial measures, it would cause unfair prejudice and mislead the jury.[68] The Court agrees.

Here, the Court finds that even if obviousness is a disputed issue and admissible under Rule 407, the Court finds that evidence of the subsequent repair of the actuator valve would be excluded under Rule 403. At its core, the actuator valve repair is probative of causation of the explosion. However, as noted, causation is not disputed as Defendants concede that natural gas was present where Galland attempted to light a cigarette, as the purpose of the vents was to release natural gas

---

[64] Even if the evidence was admissible to prove contributory negligence—which the Court disputes—the Court would exclude it under the Rule 403 analysis provided herein.
[65] R. Doc. 77 at p. 7 (internal quotation marks omitted).
[66] *Id.* at pp. 7–8.
[67] R. Doc. 102 at pp. 4–5.
[68] *Id.*

in that area.[69] Therefore, the probative value is actually quite minimal because it would merely confirm what Defendants have already conceded. But the same cannot be said for the potential for unfair prejudice, confusion of issues, and misleading the jury resulting from the introduction of the subsequent actuator repair. Allowing Plaintiffs to introduce evidence of this subsequent remedial measure would violate the policy goals of Rule 407 and unfairly prejudice the Defendants, as the jury would likely imply culpability upon Defendants from such evidence. Thus, the Court finds such evidence inadmissible under Rule 403.

### B. Painting/stenciling of "No Smoking" or "Hazard" signs

Defendants contend that the Court should "exclude all evidence of post-incident warnings, including all evidence related to placement of 'No Smoking' or 'Hazard' signs on the M/V HARVEY ENERGY or any other vessel, and any drawings, photographs, documentation, or communications regarding the purchase, acquisition, and/or installation of 'No Smoking' or 'Hazard' signs/stencils for or on the M/V HARVEY ENERGY or any other vessel after the incident."[70] Plaintiffs, in opposition, maintain that because such markings "were a part of the original plans for the ENERGY that were approved by the America Bureau of Shipping ("ABS") and the Coast Guard before the vessel went into operation[,]" they are not truly subsequent remedial measures.[71] Instead, Plaintiffs assert that such markings were required by regulations and that such evidence is impeachment evidence because it "goes directly

---

[69] *Id.* at p. 3.
[70] R. Doc. 53-1 at p. 8.
[71] R. Doc. 77 at p. 12.

to Harvey's knowledge about the danger presented by the vents and is admissible to impeach Harvey's testimony to the contrary, including whether the danger was so obvious that no warnings were necessary."[72] In reply, Defendants point to Harvey Gulf's corporate deposition in which Harvey Gulf's corporate officer "testified unequivocally that the drawings with stenciled lettering of 'No Smoking' and 'Hazard' were shipyard drawings that were never submitted to the ABS or the USCG for approval."[73] Defendants further argue that "[t]here was no regulatory requirement to put these signs above the pilot house where the incident occurred."[74] The Court finds Plaintiffs' argument unpersuasive.

"Evidence of the placement of warning signs or tape around an area with an alleged defect constitutes exactly the type of evidence contemplated by Rule 407."[75] Plaintiffs attempt to circumvent this rule by arguing that such evidence can be used for impeachment purposes for Harvey Gulf's open and obvious defense.[76] Defendants, however, state that obviousness of the repaired actuator valve is not at issue in this case.[77] "[T]he Fifth Circuit has cautioned district courts against the 'liberal application' of the impeachment exception to 'guard against the improper admission of evidence to prove prior negligence under the guise of impeachment.'"[78] Further, because such evidence would be tangentially related, if at all, to any testimony

---

[72] *Id.* at p. 14.
[73] R. Doc. 102 at p. 6.
[74] *Id.* at p. 7.
[75] *Reddin v. Robinson Property Group Ltd. Partnership*, 239 F.3d 756, 760 (5th Cir. 2001).
[76] *See* R. Doc. 77 at p. 14.
[77] R. Doc. 102 at pp. 4–5.
[78] *Robert v. Maurice*, Civil Action No. 18-11632, 2020 WL 4043318, at *6 (E.D. La. July 17, 2020)(Brown, J.)(quoting *Blythe v. Bumbo Int'l Trust*, 634 F. App'x. 944, 950 (5th Cir. 2015) (citation modified)).

regarding the obviousness of the alleged defect of the actuator valve, the Court finds that such argument is a "semantic manipulation, and [the evidence] must therefore be rejected."[79]

### C.    The safety stand-down

Defendants allege that the Court should "exclude evidence of the safety stand-down that was called by [Harvey Gulf's Chairman and CEO] after the incident, including any communications regarding same, as well as all references to post-incident safety meetings or alerts that addressed the incident, including any related documents, summaries, or notes[]" pursuant to Rule 407.[80] Defendants further argue that any post-incident safety meeting, safety alert, or stand-down is irrelevant as "it does not have the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence."[81] Finally, Defendants argue that such evidence is excludable under Rule 403.[82] Plaintiffs, in contrast, contend that "[t]he safety stand-down and post-incident safety meetings or alerts at issue in this case involved reminders about existing rules, not the implementation of new procedures; such evidence is outside the scope of Rule 407."[83]  Plaintiffs fail to respond to Defendants' arguments that the evidence lacks relevance and further should be excluded under Rule 403. Defendants reply by asserting that "[t]he CEO's order and safety meeting were done to make

---

[79] *Hardy*, 870 F.2d at 1011.
[80] R. Doc. 53-1 at 9. *See* R. Docs. 53-12 and 53-13.
[81] R. Doc. 53-1 at p. 10.
[82] *Id.* at pp. 10-11.
[83] R. Doc. 77 at 15.

accidents like Plaintiffs' less likely to occur[,]" and thus the Court should grant its Motion pursuant to Rule 407.[84]

Rule 407 "only prohibits evidence . . . of subsequent remedial measures, not evidence of a party's analysis" of an accident."[85] "[B]y themselves, post-accident investigations would not make the event 'less likely to occur;' only the actual implemented changes make it so."[86] Post-incident investigative reports "implicate the policies of Rule 407[,]" so any investigative reports that recommend remedial measures should be excluded to the extent it does as much.[87] Defendants' arguments that the notice of a stand down at issue here[88] meeting is akin to a subsequent remedial measure is a strained interpretation of Rule 407. Even if, arguably, the stand down notice included a recommendation,[89] the Court agrees with another section of this court and finds that such are also not remedial measures and are not excludable.[90] Further, to the extent that Defendants argue that the stand down is not relevant, the Court disagrees. The Court thus finds that evidence of Defendants'

---

[84] R. Doc. 102 at p. 8.
[85] *Brazos River Authority*, 469 F.3d at 430 (citation modified).
[86] *Id.*
[87] *Walker v. Pioneer Prod. Servs., Inc.*, No. 15-0645, 2016 WL 3459881, at *1 (E.D. La. June 24, 2016) (Zainey, J.). *See Ponds v. Force Corp.*, No. 16-1935, 2017 WL 67530, at *2 (E.D. La. Jan. 6, 2017) (Africk, J.); *Thornton v. Diamond Offshore Drilling, Inc.*, No. 07-1839, 2008 WL 2315845, at *5 (E.D. La. May 19, 2008) (Vance, J.).
[88] R. Doc. 53-12 and 53-13.
[89] "Please remind everyone that they are only to smoke in the designated posted smoking area which every boat has, and for no reason is anyone to smoke cigarettes anywhere else on the vessel." R. Doc. 53-12 at p. 3.
[90] *Robinson v. Diamond Offshore Mgmt. Co.*, No. 04-1899, 2006 WL 197010, at *3 (E.D. La. Jan. 26, 2006). Moreover, as reflected, the stand down seemingly gave notice of a "reminder," rather than a subsequent remedial measure. *See* 23 Wright & Miller's Federal Practice & Procedure § 5283 (2d. ed. 2025)("But the key to designating an action as a remedial measure . . . is whether the action 'would have made an earlier injury or harm less likely to occur.'").

safety stand-down is admissible to the extent it does not mention a recommendation of remedial measures. Any mentioning of remedial measures in the safety stand-down shall be precluded from trial.

### D.    Modifications to Harvey Gulf's safety manual

Defendants assert that "all evidence of changes, additions, or revisions to Harvey Gulf's Safety Manual or safety policies and procedures" should be excluded pursuant to Rule 407 as irrelevant subsequent remedial measures.[91] Plaintiffs disagree and argue that the Court "should reserve ruling on the admissibility of evidence of changes, additions, or revisions to Harvey's Safety Manual or safety policies and procedures; some of this evidence is plainly admissible for impeachment purposes and evidence of other measures falls outside the scope of Rule 407 because it was undertaken at the behest of regulatory authorities."[92] In reply, Defendants maintain that none of their policy revisions were ordered by governmental authorities and were instead voluntary changes.[93]

Defendants correctly highlight that "[p]ost-incident revisions to safety manuals aimed at making an event less likely to occur are not admissible."[94] And Plaintiffs correctly note that evidence of subsequent remedial measures may be used for other purposes, such as impeachment.[95] Accordingly, the Court defers ruling on this issue until objections are properly made at trial to determine whether evidence

---

[91] R. Doc. 53-1 at p. 11.
[92] R. Doc. 77 at p. 18.
[93] R. Doc. 102 at p. 9.
[94] R. Doc. 53-1 at 11.
[95] R. Doc. 77 at p. 11.

of subsequent modifications to Harvey Gulf's safety manual can properly be used for impeachment.

### E.    Harvey Gulf's post-incident investigations

Defendants ask the Court to "exclude all references to Harvey Gulf's post-incident investigation, or lack thereof, including any findings, the absence of any findings, and any allegations that Harvey Gulf's post-incident investigation was substandard or lacking in any way."[96] Plaintiffs, in opposition, state that Defendants' request is overbroad and that the "appropriate, narrowly tailored approach is redaction of any implemented corrective actions, not exclusion of investigative facts, methodology, or analysis."[97] Plaintiffs contend that Defendants' Motion should be denied because Defendants have "failed to point to any remedial measures recommended by its investigation that were actually implemented."[98] Defendants, in their Reply, assert that such evidence should be excluded under Rule 403 because "Plaintiffs' continued efforts to use the unavailability of investigatory findings to suggest that Harvey Gulf's safety culture is deficient invites confusion and punitive inference by the jury—precisely the danger that Federal Rule of Evidence 403 seeks to prohibit."[99]

As noted, Rule 407 "only prohibits evidence . . . of subsequent remedial measures, not evidence of a party's analysis" of an accident."[100] "Rule 407 does not

---

[96] R. Doc. 53-1 at p. 13.
[97] R. Doc. 77 at p. 22.
[98] *Id.*
[99] R. Doc. 102 at pp. 9–10.
[100] *Brazos River Authority*, 469 F.3d at 430 (citation modified).

apply to investigative reports or post-accident inspections that analyze the cause or reasons for an accident."[101] Plaintiffs correctly highlight that Defendants have "failed to point to any remedial measures recommended by its investigation that were actually implemented."[102] Because the record indicates that Defendants' post-incident investigations do not entail implemented subsequent remedial measures but instead are "more akin to a post-accident report or investigation[,]"[103] the Court finds that such evidence does not fall under the ambit of Rule 407. The Court, however, will defer on a Rule 403 analysis until trial as it is not clear what the records are that Defendants sought to exclude under this category.

### F. Photos, videos, documents, communications, and correspondence from Defendants to governmental agencies pertaining to subsequent remedial measures

Defendants aver that "[t]he Court should enter a catch-all ruling to exclude all photos, video, documents, communications, and correspondence by, to, from or on behalf of Harvey Gulf and/or any governmental agency and/or internally at Harvey Gulf related to any subsequent remedial measures."[104] Defendants advance this request on the premise that such "evidence is inadmissible under Rule 407 for the purpose of encouraging defendants to take post-incident action to make future accidents less likely."[105] In opposition, Plaintiffs assert that Defendants' request

---

[101] *Robert*, 2020 WL 4043318, at *6.
[102] R. Doc. 77 at 22.
[103] *Robert*, 2020 WL 4043318, at *6.
[104] R. Doc. 53-1 at 15.
[105] *Id.*

should be denied as premature due the lack of adequate context in which such evidence may be raised at trial.[106] The Court agrees.

Motions in *limine* should be granted sparingly,[107] and the grant of a sweeping, overly broad motions in *limine* should be avoided.[108] Accordingly, the Court denies Defendants' request as premature and overbroad. Without context, the Court declines to enter such a sweeping motion. The Court will issue a ruling based on proper objections made at trial.

## IV.    CONCLUSION

For the above reasons, **IT IS HEREBY ORDERED** that the Motion[109] is **GRANTED IN PART** and **DENIED IN PART as stated herein.**

New Orleans, Louisiana, October 7, 2025.

**WENDY B. VITTER**
**United States District Judge**

---

[106] R. Doc. 77 at 24.
[107] *Pace*, 10 F.3d at 1115–16 (quotation omitted).
[108] *See U.S. v. Lowery*, 135 F.3d 957, 969 (5th Cir. 1998).
[109] R. Doc. 53.